## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| QASIM SHABAZZ; GEORGE WILLIAMS; and NADIA METOYER, | |
| **Plaintiffs,** | **8:25CV699** |
| vs. | **MEMORANDUM AND ORDER** |
| CITY OF OMAHA, a municipal corporation; et al.; | |
| **Defendants.** | |

The plaintiffs commenced this action for damages for an unlawful seizure and detention pursuant to 42 U.S.C. § 1983 against the City of Omaha and multiple Omaha Police Department Officers arising out of a traffic stop of boxer Terence "Bud" Crawford's vehicle following his championship celebration. The defendants[1] have filed a motion to dismiss (Filing No. 12) three of the plaintiff's claims for lack of jurisdiction due to sovereign immunity and for failure to state claims upon which relief may be granted. The moving defendants also seek dismissal of the official capacity claims against the individually named officers as redundant to the claims against the City of Omaha. The plaintiffs did not respond to the motion.[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Filing No. 20). For the following reasons, the Court will grant the motion.

## BACKGROUND

The following facts are taken from the plaintiffs' Complaint (Filing No. 1), which the Court accepts as true for purposes of the motion to dismiss. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

---

[1] Defendant, Officer Matthew Flores, is not one of the moving defendants because the plaintiffs required additional time to locate and serve Officer Flores; his responsive pleading is due August 3, 2026. (Filing No. 19). However, because the arguments raised in the defendants' motion are jurisdictional, the Court's rulings will extend to Officer Flores.

[2] "Failure to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts." NECivR 7.1(b)(1)(C).

On September 27, 2025, the City of Omaha held a publicly funded victory parade for professional boxer Terence "Bud" Crawford ("Crawford"), during which Mayor John Ewing Jr. presented Crawford with the Key to the City and a championship belt. (Filing No. 1 at ¶ 30-31). Following the parade, Crawford attended a private birthday celebration at the Steelhouse in downtown Omaha accompanied by his personal bodyguard and head of security, plaintiff Qasim Shabazz a/k/a Carl Thomas ("Shabazz"). (*Id.* at ¶ 32, 35). Shabazz carries a firearm and has firearms in his vehicle as part of his professional duties as Crawford's bodyguard. (*Id.* at ¶ 38, 40).

At approximately 1:27 a.m. on September 28, 2025, Crawford departed the Steelhouse driving his 2025 Lucid Sapphire with Shabazz in the front passenger seat and plaintiffs George Williams ("Williams") and Nadia Metoyer ("Metoyer") in the rear passenger seats. (*Id.* at ¶ 39). At approximately 1:28 a.m., Omaha Police Department ("OPD") officers initiated a traffic stop of Crawford's Lucid Sapphire at North 12th and Cass Streets. Defendant, Officer James Valencia-Soethout, approached the passenger side of the vehicle and while another defendant, Officer Mason Gregurich, approached the driver's side. (*Id.* at ¶ 41-43). As Officer Valencia-Soethout reached the passenger window, Shabazz immediately informed the officer that he had a firearm on his person, and kept his hands visible. (*Id.* at ¶ 44-46). The occupants of the vehicle remained seated with their seatbelts fastened and made no threatening movements, statements, or gestures. (*Id.* at ¶ 48-50). Three seconds after Shabazz disclosed he had a firearm on his person, Officer Gregurich and Officer Valencia-Soethout drew their service weapons and pointed them at the Lucid Sapphire's occupants. The officers ordered all the occupants to exit the vehicle at gunpoint. Crawford exited the vehicle and was immediately handcuffed. (*Id.* at ¶ 53-56).

Officer Valencia-Soethout pointed his service weapon at Shabazz's head and ordered him to hand over his firearm. Shabazz refused because he feared that reaching for his holstered firearm while Officer Valencia-Soethout had his weapon drawn and pointed at him would result in being shot. (*Id.* at ¶ 57-60). Shabazz told Officer Valencia-Soethout to instead take the firearm from its holster. After Officer Valencia-Soethout removed Shabazz's firearm, Shabazz exited the vehicle and was immediately handcuffed. (*Id.* at ¶ 61-64).

Additional OPD officers subsequently arrived at the scene. One officer approached Williams, who was still buckled in the rear passenger seat of the Lucid Sapphire. That officer drew his firearm and pointed it at Williams' face and ordered Williams to exit the vehicle. Williams had his hands raised and was complying with the officers' commands, and told the officer he could

2

unbuckle his seatbelt himself because Williams did not want his movements to be misinterpreted. That officer removed Williams' seatbelt and immediately handcuffed Williams when he exited the vehicle. (*Id.* at ¶ 65-72).

Another officer approached the other side of the Lucid Sapphire with her weapon drawn and pointed at Metoyer, who was ordered to exit the vehicle at gunpoint and was handcuffed. Metoyer complied with all commands, and made no statements or movements suggesting she possessed a weapon. (*Id.* at ¶ 74-79).

Officers ran checks of Shabazz's firearm and Crawford's firearm from the center console, which "came back clean with no issues or problems." (*Id.* at ¶ 90-93). None of the occupants resisted officers' commands, made threatening statements, or otherwise were observed engaging in criminal activity. All four occupants of the vehicle remained handcuffed for approximately thirty minutes, during which they experienced intense fear and terror that they could be shot and killed. During their detention, a crowd of people gathered at the scene and began filming and recording the incident, causing humiliation and indignity of being handcuffed and treated like dangerous criminals. After thirty minutes, the officers returned the two firearms and ended the detention. (*Id.* at ¶ 82-107).

Shabazz, Williams, and Metoyer filed this Complaint against the City of Omaha and the OPD officers involved in their stop and detention. The Complaint contains ten causes of action against the following officers in both their individual and official capacities pursuant to 42 U.S.C. § 1983 for violations of the plaintiffs' rights to be free from excessive force and for failures to intervene: Officer Mason Gregurich; Officer James Valencia-Soethout; Officer Andrew Rathman; Officer William Klug; Officer Trevor Lapoint; Officer Courtney Collins; Officer Gilberto Riveros-Echague; Officer Yuliya Canterbury; Officer Michael Rosiere; Officer Matthew Flores; Officer Luis Reynoso-Gonzalez; Sergeant Benjamin Hoffman; Lieutenant Sean Sheridan; Lieutenant William Dawson Jr.; and Chief Todd Schmaderer. The Complaint further contains causes of action against Defendant, City of Omaha, for its unconstitutional policy or custom of deploying firearms in response to compliant individuals expressing they have lawful firearms in their vehicle, and for its deliberate indifference in failing to adequately supervise and train officers regarding interactions with citizens lawfully carrying firearms, resulting in constitutional injury. (Filing No. 1).

The defendants have now filed a motion to dismiss some of the plaintiffs' claims for lack of jurisdiction due to sovereign immunity and for failure to state claims upon which relief may be granted. Specifically, the defendants seek dismissal of Count VIII, which is a claim for violation of the plaintiffs' civil rights under Neb. Rev. Stat. § 20-148 against the defendant Officers Gregurich, Valencia-Soethout, Rathman, Klug, Lapoint, Collins Riveros-Echague, Canterbury, Rosiere, Flores, Reynoso-Gonzalez, Hoffman, Sheridan, and Dawson Jr.; Count IX, which is an excessive force claim in violation of the Nebraska Constitution (Neb. Const. art. I, § 7) against the same defendant Officers; and Count X, which is an Equal Protection claim under the Nebraska Constitution (Neb. Const. art. I, §§ 1, 3) alleging the officers' use of excessive force was based upon the plaintiffs' race. (Filing No. 12; Filing No. 1). The defendants argue (1) Count VIII must be dismissed because Neb. Rev. Stat. § 20-148 is a procedural statute that does create a cause of action against individuals acting as public officers of the State; (2) Counts IX and X must be dismissed because the State has not waived its sovereign immunity as to those claims; and (3) the official capacity claims against the individual defendants are redundant of the claims against the City of Omaha, and must be dismissed. (Filing No. 13).

## STANDARD OF REVIEW

### A. *Federal Rule of Civil Procedure 12(b)(1): Jurisdiction*

The defendants' arguments concerning subject matter jurisdiction rely on sovereign immunity. Sovereign immunity—of which the Eleventh Amendment is one "exemplification"—"'is the privilege of the sovereign not to be sued without its consent.'" *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quoting *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) and citing *Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 753 (2002)); see also U.S. Const. Amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . ."). "States enjoy sovereign immunity from suits by private individuals in federal court under the Eleventh Amendment[.]" *Cunningham v. Kahler*, 171 F.4th 1115, 1119 (8th Cir. 2026). "Absent a waiver of state sovereign immunity or a valid abrogation of sovereign immunity by Congress, federal courts may not entertain a private party's suit against a State." *EEE Mins., LLC v. State of N. Dakota*, 81 F.4th 809, 815 (8th Cir. 2023). "Claims against state officials acting in their official capacities are considered claims against the

4

State and therefore subject to sovereign immunity." *Bio Gen LLC v. Sanders*, 142 F.4th 591, 604 (8th Cir. 2025).

Sovereign immunity is a jurisdictional matter that is properly addressed under Federal Rule of Civil Procedure 12(b)(1). See *Cunningham*, 171 F.4th at 1118 (citing *Worth v. Jacobson*, 108 F.4th 677, 684 n.3 (8th Cir. 2024)) ("If sovereign immunity applies, it deprives courts of subject-matter jurisdiction."). "In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Id.* (quoting *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018)). "When considering a facial attack, 'the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6).'" *Id.* at 1119 (quoting *Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024). The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Here, the defendants' sovereign immunity defense is based upon the pleadings and the Nebraska Political Subdivisions Tort Claims Act ("PSTCA") and is brought as a facial challenge. In a facial attack, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *Cunningham*, 171 F.4th at 1119 (quoting *Sabri v. Whittier All.*, 833 F.3d 995, 998 (8th Cir. 2016)).

### B. *Federal Rule of Civil Procedure 12(b)(6)*: *Failure to State a Claim*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)).

5

## DISCUSSION

### A.        Count VIII: Neb. Rev. Stat. § 20-148

The defendants move to dismiss Count VIII of the Complaint, which is a standalone claim for violation of the plaintiffs' civil rights under Neb. Rev. Stat. § 20-148 against the individually named OPD officers.  The defendants argue dismissal is required because § 20-148 is a procedural statute that does not create a substantive right, and the plain language of the statute exempts political subdivisions and their employees from its scope.  (Filing No. 13 at p. 3).

Section 20-148(1) provides, "Any person or company, as defined in section 49-801, *except any political subdivision*, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by . . . the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person." Neb. Rev. Stat. § 20-148(1) (emphasis added).  This statute specifically exempts political subdivisions and officers of political subdivisions, which would include Omaha Police Department officers acting within the scope of their employment with the City of Omaha.  See *id.*; see also Neb. Rev. Stat. § 13-903(1) (defining "political subdivision" to include "cities of all classes"); *McKenna v. Julian*, 763 N.W.2d 384, 390-91 (Neb. 2009) *abrogated on other grounds by Doe v. Bd. of Regents of Univ. of Nebraska*, 788 N.W.2d 264 (Neb. 2010)) (dismissing state constitutional claims against an Omaha police officer as barred by sovereign immunity, noting "§ 20-148, unlike § 1983, explicitly prohibits actions based on constitutional violations against a political subdivision.").

The Nebraska Supreme Court has explained, "§ 20-148 is a procedural statute which does not create any new substantive rights." *Goolsby v. Anderson*, 549 N.W.2d 153, 157 (Neb. 1996); accord *Ritchie v. Walker Mfg. Co.*, 963 F.2d 1119, 1122 (8th Cir. 1992) (agreeing with the district court's conclusion that § 20-148 "does not purport to create new causes of action or rights but merely provides a civil avenue of recovery for violations of constitutional or statutory civil rights[.]").  Nor does § 20-148 "operate to waive sovereign immunity." *Potter v. Bd. of Regents of the Univ. of Nebraska*, 844 N.W.2d 741, 750 (Neb. 2014).  Because § 20-148 is a procedural statute that does not create a substantive right, and the plain language of the statute specifically exempts political subdivisions and their employees from its scope, the Court finds Plaintiffs' standalone claim under Neb. Rev. Stat. § 20-148 in Count VIII of the Complaint must be dismissed.

6

## B.    Counts IX and X: Nebraska Constitutional Claims

The defendants move to dismiss the plaintiffs' claims for violations of the Nebraska State Constitution on the basis of sovereign immunity. (Filing No. 13 at pp. 4-6). The defendants contend that Nebraska and its political subdivisions have not waived their immunity to suit as to the plaintiffs' claims for excessive force in violation of Neb. Const. art. I, § 7 (Count IX) and violation of Equal Protection under Neb. Const. art. I, §§ 1, 3 (Count X). The Court agrees.

The sovereign immunity of the State of Nebraska and its political subdivisions "is grounded in Neb. Const. art. V, § 22," which provides, "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." *Larsen v. Sarpy Cnty. Sch. Dist. No. 77-0027*, 25 N.W.3d 185, 196 (Neb. 2025). The Nebraska Supreme Court has "long held that this constitutional provision is not self-executing and that no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided." *Id.* The Legislature has enacted the Nebraska Political Subdivisions Tort Claims Act ("PSTCA"), Neb. Rev. Stat. § 13-901 et seq., to govern tort claims against political subdivisions. *See id.* The PSTCA "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007)); see also Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA]."). "The PSTCA reflects a limited waiver of governmental immunity," *Geddes*, 729 N.W.2d at 665, and its provisions "are to be strictly construed in favor of the sovereign and against waiver." *Joshua M. v. State*, 5 N.W.3d 454, 466 (Neb. 2024) (citations omitted).

The PSTCA grants a limited waiver of a political subdivision's sovereign immunity with respect to certain, but not all, types of tort actions. The PSTCA defines a tort claim as "any claim against a political subdivision for money . . . on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death." Neb. Rev. Stat. § 13-903(4). Thus, the PSTCA waives immunity for some tort claims against political subdivisions like the City of Omaha and its officers, subject to certain exceptions. See Neb. Rev. Stat. §§ 13-903(1) and (3), 13-1908. These exceptions include "any claim arising

7

out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," which is sometimes referred to as the intentional torts exception. *Kimbrough v. Hogan*, No. 8:23CV64, 2025 WL 2733640, at *2 (D. Neb. Sept. 25, 2025) (citing Neb. Rev. Stat. § 13-910(7)). This intentional torts exception "does not merely bar claims for assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Britton v. City of Crawford*, 803 N.W.2d 508, 517 (Neb. 2011) (internal quotation marks and citation omitted; emphasis in original). If exempted conduct set forth in Neb. Rev. Stat. § 13-910(7) is "inextricably linked" with the plaintiff's damages, then the PSTCA preserves sovereign immunity. See *id.* at 518. "Where a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA." *McKenna,* 763 N.W.2d at 391.

Here, the plaintiffs allege that the defendant officers initiated a traffic stop of their vehicle, ordered them to get out of the vehicle at gunpoint, and handcuffed and subjected them to an unlawful detention without any indication that the plaintiffs were dangerous or engaged in illegal conduct. The plaintiffs' factual allegations in essence are that the officers' intentional actions in using excessive force—motivated by the plaintiffs' race—caused them harm, in violation of the Nebraska Constitution. Thus, even though the plaintiffs did not plead Counts IX and X as intentional torts, the factual allegations constitute grounds for bringing assault, false arrest, and/or battery claims under Nebraska law. See *Reavis v. Slominski*, 551 N.W.2d 528, 536 (Neb. 1996) (defining battery as "'an actual infliction' of an unconsented injury upon or unconsented contact with another" and "assault as a 'wrongful offer or attempt with force or threats, made in a menacing manner, with intent to inflict bodily injury upon another with present apparent ability to give effect to the attempt[.]"); see also *Kimbrough*, 2025 WL 2733640, at *3 (determining the plaintiff's allegations that police officers dragged him from a police cruiser in handcuffs while being tased, punched, and choked "constitute grounds for bringing battery and assault claims under Nebraska law" and thus fell under the intentional torts exception of the PSTCA). As such, the plaintiffs' claims in Counts IX and X "arise[] out of" the intentional torts included within the PSTCA's exception to its waiver of sovereign immunity, and therefore must be dismissed. See *McKenna,* 763 N.W.2d at 388-90 (affirming dismissal of claims brought against individual police officer for

8

assault, battery, and false arrest, based on sovereign immunity).  Therefore, the plaintiffs' claims for violation of the Nebraska Constitution contained in Counts IX and X are dismissed.[3]

### C.     Official Capacity Claims

The defendants also move to dismiss the official capacity claims against them, arguing that because the City of Omaha is a defendant in this case the official capacity claims against the OPD officers are redundant of the claims against the City.  (Filing No. 13 at pp. 6-8).  The Court agrees. "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)).  In other words, "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted).  Here, this means that the plaintiffs' official capacity claims against the OPD officers are really claims against their employing entity, the City of Omaha.  See *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").  Because the City of Omaha is also a party to this suit, the Court dismisses the official capacity claims against the individually named OPD officers[4] as redundant of the claims against the City.  See *id.* (concluding that the district court properly dismissed the official capacity claim against a police sergeant as redundant of the municipal liability claim against the city); see also *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (concluding the district court properly dismissed claim against city police officer sued in his official capacity as redundant of the claim against the city); *Villarreal v. Schmaderer*, No. 8:20CV403, 2021 WL 2444276, at *3 (D. Neb. June 15, 2021) (dismissing official-capacity claims against police officers where the municipality was also named as defendant).  Accordingly,

---

[3] Additionally, as discussed above, the plaintiffs cannot maintain separate claims for violation of the Nebraska Constitution under Neb. Rev. Stat. § 20-148(1) because it specifically exempts political subdivisions and officers of political subdivisions.  See Neb. Rev. Stat. § 20-148(1); see also *McKenna*, 763 N.W.2d 384, 390-91 (Neb. 2009) (dismissing state constitutional claims against an Omaha police officer as barred by sovereign immunity, noting "§ 20-148, unlike § 1983, explicitly prohibits actions based on constitutional violations against a political subdivision.").

[4] Because claims against Officer Flores in his official capacity are claims against the City itself, the Court finds it appropriate to dismiss any claims asserted against him in his official capacity as well.

**IT IS ORDERED**:

1. The defendants' Partial Motion to Dismiss (Filing No. 12) is granted;
   a. Counts VIII, IX, and X of the plaintiffs' Complaint are dismissed; and
   b. The plaintiffs' claims against defendant Officers Gregurich, Valencia-Soethout, Rathman, Klug, Lapoint, Collins Riveros-Echague, Canterbury, Rosiere, Flores, Reynoso-Gonzalez, Hoffman, Sheridan, Dawson Jr., and Flores in their official capacities are dismissed.
2. The defendants shall file an answer to the plaintiffs' remaining claims on or before **July 8, 2026**.

Dated this 24th day of June, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge